# IN THE COURT OF APPEALS OF IOWA

No. 16-1989
Filed February 21, 2018

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**LEON KURTIS SHIVERS,**
      Defendant-Appellant.
_____

Appeal from the Iowa District Court for Webster County, Kurt L. Wilke, Judge.

The defendant appeals from his conviction for vehicular homicide by operating while intoxicated. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Martha J. Lucey, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Thomas J. Ogden, Assistant Attorney General, for appellee.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**POTTERFIELD, Judge.**

Leon Shivers appeals from his conviction for vehicular homicide by operating while intoxicated. He maintains the trial court erred when it denied his request to instruct the jury on spoliation. He also claims trial counsel provided ineffective assistance. Specifically, he maintains trial counsel (1) should have objected to certain jury instructions and proposed different, updated instructions based on the Restatement (Third) of Torts; (2) failed to object to inadmissible hearsay; and (3) failed to object to an expert's testimony about the ultimate fact at issue for the jury to determine—whether the car accident was the cause of the decedent's death. He argues he was prejudiced by each of counsel's alleged errors individually and cumulatively.

**I. Background Facts and Proceedings.**

The undisputed facts establish that John McCartney was driving to the grocery store on the evening of April 4, 2016, when his vehicle was struck in the intersection of a four-way stop by a Dodge Journey. At the time of impact, the Dodge Journey was traveling at a speed of fifty-two miles per hour. In the seconds leading up to impact, the Dodge Journey was traveling in excess of seventy-two miles per hour; the speed limit on the portion of road was twenty-five miles per hour. The Dodge Journey was owned by Shivers's girlfriend and her mother.

McCartney suffered subdural brain bleeds on both the right and left side of his brain, and he was airlifted to a Des Moines hospital for brain surgery. In the days following surgery, McCartney regained consciousness one time to the extent that he was able to squeeze the hands of family members when prompted. McCartney was otherwise unconscious and, at some point, he stopped responding

to pain. The family decided to place McCartney in hospice care, and he died on April 22.

Shivers was apprehended at the scene after two witnesses stated they saw him exit the driver's side of the Dodge Journey. He denied being the driver. His blood alcohol content—taken approximately four hours after the crash—tested at .169. In May, the State charged Shivers with vehicular homicide by operating while intoxicated.

At the November 2016 trial, Shivers disputed he was the driver of the Dodge Journey and that the crash was the ultimate cause of McCartney's death, as his death occurred approximately eighteen days after the incident and only after the family chose to forgo life-sustaining medical treatment.

The jury convicted Shivers as charged, and he was sentenced to an indeterminate prison term not to exceed twenty-five years.

Shivers appeals.

## II. Discussion.

### A. Spoliation Instruction.

*Standard of Review.* The Iowa Supreme Court has now clarified that an alleged instructional error for failure to give a spoliation instruction is reviewed for correction of error at law. While the court previously applied an abuse of discretion standard for denial of a spoliation instruction in the context of a discovery sanction, *see State v. Langlet*, 283 N.W.2d 330, 335 (Iowa 1979), and for review of the form of the instruction, *see State v. Piper*, 663 N.W.2d 894, 915 (Iowa 2003), *overruled on other grounds by State v. Hanes*, 790 N.W.2d 545, 550 (Iowa 2010), the abuse-of-discretion standard of review "does not extend to *all* refusals to give a requested

jury instruction." *Alcala v. Marriott Intern., Inc.*, 880 N.W.2d 699, 707 (Iowa 2016)*.* Unless there is a discretionary component, the court now applies the typical review of alleged instructional error for correction of error at law. *Id.* ("Thus, we clarify today that absent the discretionary component present in [*State v.*] *Langlet*, [283 N.W.2d 330 (Iowa 1979),] we review refusals to give a requested jury instruction for correction of errors at law").

*Merits.* A spoliation instruction is "a direction to the jury that it could infer from the State's failure to preserve [evidence] that the evidence would have been adverse to the State." *State v. Vincik*, 398 N.W.2d 788, 795 (Iowa 1987). The jury should be instructed on spoliation when substantial evidence supports the following: "(1) the evidence was 'in existence'; (2) the evidence was 'in the possession of or under control of the party' charged with its destruction; (3) the evidence 'would have been admissible at trial'; and (4) 'the party responsible for its destruction did so intentionally.'" *State v. Hartsfield*, 681 N.W.2d 626, 630 (Iowa 2004) (quoting *Langlet*, 283 N.W.2d at 335).

> [T]he defendant need only generate a jury question on four specific factors in order to meet the requirements for a spoliation inference*.* If substantial evidence has been introduced on each element, then, as we said in *State v. Ueding*, 400 N.W.2d 550, 552 (Iowa 1987) a spoliation instruction "should be given". Our conclusion that spoliation instructions should be given when supported by the record is particularly appropriate given the potential for constitutional due process implications arising from the State's intentional destruction of evidence.

*Id.*

There is substantial evidence that the Dodge Journey existed and that the State was in control of the vehicle for a short time after the accident. The Iowa State Trooper who performed the technical investigation of the crash testified he

examined the vehicle on April 5, the day following the accident. He took photographs and opened the driver's door. Afterward, he released the vehicle to its owners, who "usually let their insurance companies take care of it from there." The mother of Shivers's girlfriend testified the vehicle was "released to the insurance company" from the place to which it had been towed following the accident. There was no further testimony about what happened to the vehicle after April 5, when the insurance company took control.

Shivers maintains his "defense centers on the functionality of the driver's door," comparing his contention he was a passenger in the vehicle with that of two of the State's witnesses who testified they saw Shivers exit the front, driver's side door after the crash. Evidence about the functionality of the car door would have been admissible at trial with proper foundation.

The fighting issue is whether the State's action of releasing the car to a third party before Shivers was charged is substantial evidence of intentional destruction of the evidence. The district court made the threshold ruling that the facts were insufficient to generate a jury question on the fourth factor, the State's intentional destruction of evidence. Because the car was released to the insurance company so quickly, Shivers did not request access to the car or give the State notice his defense included analysis of the car door before the car was released. *See Langlet*, 283 N.W.2d at 332–33 (affirming the trial court's decision not to instruct the jury on spoliation where the recording of the defendant's phone call was erased pursuant to a policy of erasing all tapes after thirty days, even though the defendant had requested the tape two days prior because "[o]nly intentional destruction supports the rationale of the rule that destruction amounts to an admission by

conduct of the weakness of one's case." (citation omitted)); *see also Vincik*, 398 N.W.2d at 795 (relying on officer's testimony the latent fingerprints on handgun were "basically smudged" and not "usable" as the reason for discarding the partial print and affirming district court's decision not to give defendant the requested spoliation instruction); *compare Hartsfield*, 681 N.W.2d at 632 (holding spoliation instruction should have been given where the defendant requested a video from an officer, the officer informed his supervisor a request for the tape had been made, and the defendant's attorney had been told no tape existed before the tape was erased).

There is no evidence the State knew Shivers wanted to examine the Dodge Journey, nor any evidence its release was conducted to prevent further examination or analysis of the car. There is not substantial evidence to conclude the State intentionally destroyed the Dodge Journey.

Moreover, even if the State should have maintained control of the Dodge Journey until Shivers was able to examine it, the record affirmatively establishes that Shivers was not prejudiced by his inability to examine the vehicle. *See State v. Hanes*, 790 N.W.2d 545, 550–51 (Iowa 2010) ("[T]he proper harmless-error analysis for errors in jury instructions that are not of constitutional dimension . . . begins with the question, 'Does it sufficiently appear that the rights of the complaining party have been injuriously affected by the error or that he has suffered a miscarriage of justice?'" (citation omitted)). Shivers, when asking the court for the spoliation instruction, stated that he "questioned" the testimony of the trooper who performed the crash investigation and testified the front, driver's side door opened. Shivers pointed out that while there were several photos of the

vehicle, none showed the driver door open. But two lay witnesses testified they saw Shivers exit the front, driver's door after the crash.

For the foregoing reasons, we cannot say the district court's denial of Shivers's request for an instruction of spoliation was error.

**B. Ineffective Assistance.**

Shivers maintains trial counsel provided ineffective assistance. He claims counsel (1) should have objected to certain jury instructions and proposed different, updated instructions based on the Restatement (Third) of Torts; (2) failed to object to inadmissible hearsay; and (3) failed to object to an expert's testimony about the ultimate fact at issue for the jury to determine—whether the car accident was the cause of McCartney's death.[1]

The State responds, in part, claiming Shivers is not entitled to relief because of the conclusory nature of his statements regarding how he was prejudiced by these alleged failures. But we cannot penalize Shivers for an incomplete claim of ineffective assistance on direct appeal. *See State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010) ("[D]efendants are no longer required to raise ineffective-assistance claims on direct appeal, and when they choose to do so, they are not required to make any particular record in order to preserve the claim for postconviction relief"). Because of this, and because we believe the record before

---

[1] To prove his claims of ineffective assistance of counsel, Shivers must prove by a preponderance of the evidence that (1) counsel failed to perform an essential duty and (2) he suffered prejudice as a result. *See State v. Morgan*, 877 N.W.2d 133, 136 (Iowa Ct. App. 2016). The claim fails if either prong is not proved. *See id.* When analyzing the prejudicial effect of multiple allegations of ineffective assistance of counsel, we "look to the *cumulative* effect of counsel's errors to determine whether the defendant satisfied the prejudice prong of the *Strickland* test." *State v. Clay*, 824 N.W.2d 488, 500 (Iowa 2012) (emphasis added) (referencing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

us is inadequate to decide Shivers's three claims, we preserve each of them for possible later proceedings. *See id.* ("If . . . the court determines the claim cannot be addressed on direct appeal, the court must preserve it for a postconviction-relief proceeding, regardless of the court's view of the potential viability of the claim."); *see also State v. Tate*, 710 N.W.2d 237, 240 (Iowa 2006) ("Ordinarily, we do not decide ineffective-assistance-of-counsel-claims on direct appeal. We prefer to reserve such questions for postconviction proceedings so the defendant's trial counsel can defend against the charge." (citation omitted)); *State v. Keys*, No. 15-1991, 2017 WL 1735617, at *9 (Iowa Ct. App. May 3, 2017) (citing *Clay*, 824 N.W.2d at 494) (preserving defendant's multiple claims of ineffective assistance where the lack of record prevented the court from resolving a number of claims on direct appeal in order to properly evaluate the cumulative prejudicial effect).

We affirm.

**AFFIRMED.**